**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| REBECCA GALUPPO and RONALD GALUPPO JR., | § | |
| *On behalf of themselves and all others similarly situated,* | § § § | Civil Action No. 6:19-cv-00506 |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | JURY TRIAL DEMANDED |
| | § | |
| LONE STAR AG CREDIT, | § | |
| | § | |
| *Defendant.* | § | |

<u>**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**</u>

Plaintiffs Rebecca Galuppo and Ronald Galuppo Jr. ("Plaintiffs"), on behalf of themselves and all others similarly situated, bring this action against Defendant, Lone Star AG Credit ("Lone Star" or "Defendant"), and allege as follows:

**NEED FOR ACTION**

1.      This is a case about a financial institution surreptitiously misapplying borrowers' loan payments so that it could extract greater interest and ultimately increase profits. Like many responsible homeowners wishing to reduce the interest paid on their mortgage and pay off their principal early, Plaintiffs overpaid their monthly mortgage payment with the understanding that Defendant would apply the extra money to the loan principal. Plaintiffs made these overpayments for years. Yet, Defendant never applied Plaintiffs' overpayments to the loan's principal. Instead, Defendant placed the extra money in a secret "Funds Held" account, which earned a trivial rate of interest—far less than the roughly 5% interest that Plaintiffs were paying on the loan. By misapplying Plaintiffs' payments, Defendant—to the Plaintiffs' detriment—derived substantial revenue from this practice.

2.      By failing to properly apply Plaintiffs' overpayments to the loan principal, Defendant violated the Truth in Lending Act, which prohibits the exact conduct in which Defendant engaged. Further, Defendant's failure to properly apply the overpayment also breached the relevant contracts between the parties and violated the covenant of good faith and fair dealing Defendant owed to Plaintiffs.

3.      Defendant's failure to apply the overpayments to the loan principal was not unique to Plaintiffs. Accordingly, Plaintiffs bring this action on behalf of themselves and other mortgagors of Defendant, seeking damages, injunctive relief and all remedies available under the Truth in Lending Act, contracts, and applicable law.

**JURISDICTION AND VENUE**

4.      Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331, as the Complaint raises a federal question based on, among other things, Defendant's violation of the Truth in Lending Act, 15 U.S.C. § 1601, *et seq*.

5.      This Court has supplemental jurisdiction over Plaintiffs' claims state law claims pursuant to 28 U.S.C. § 1367(a), because those claims are so related to Plaintiffs' claims under federal law that they form part of the same case or controversy.

6.      Further, this Court has original jurisdiction of this action under the Class Action Fairness Act of 2005.  Pursuant to 28 U.S.C. § §1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed class is a citizen of a different state than the Defendant.

7.      This Court has personal jurisdiction over Defendant Lone Star because it is headquartered in Texas. Moreover, Defendant misapplied the loan payments in Texas, made the decision to refuse to credit the overpayments while in Texas, and sold and marketed the loans at

issue within Texas such that the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.

8.    Venue is proper in this Court under 28 U.S.C. § 1391(b)–(d)) because the events or omissions giving rise to the claims described herein occurred in the Western District of Texas. For example, Plaintiffs home is located in Bynum, Texas, which is located within the District.

## PARTIES

9.    Plaintiffs Rebecca and Ronald Galuppo are citizens and residents of the state of Texas.

10.    Defendant Lone Star AG Credit is a Federal Land Credit Association incorporated under the laws of Texas and maintaining its principal place of business in Texas. Defendant may be served through its registered agent for service of process at 1612 Summit Ave, Suite 300, Fort Worth, Texas, 76102.

## FACTUAL ALLEGATIONS

11.    Plaintiffs, Rebecca and Ronald Galuppo, are the owners of a property located in Bynum, Texas, which is located in Hill County, Texas. In 2002, they took out a mortgage loan in the amount of $189,500 with a starting variable interest rate of 4.85% interest from Lone Star Land Bank, FLCA. On June 1, 2017, a conversion agreement was signed making the loan a fixed interest rate of 5.5%.

12.    In the hopes of paying off the loan early, Plaintiffs have intentionally *overpaid* their monthly mortgage payment. Plaintiffs did this for years under the reasonable expectation that Defendant would immediately apply these overpayments to the loan principal to reduce their balance, thus reducing the amount of interest to be paid.

13.     Indeed, under the terms of the loan, the balance may be prepaid, in whole or in part, without penalty. That provision, which was part of boilerplate, adhesive and nonnegotiable term, provides:

> Unless provided otherwise by separate agreement between the undersigned and the payee, the principal balance of this note may be prepaid, in whole or in part, without penalty. Any amount so prepaid may be applied, at the holder's election, first to accrued interest on the amount of the tendered payment and the balance to the reduction of the principal. Prepayment shall not defer the due date of any installment as provided above but may reduce or discharge one or more of the installments last maturing.

14.     Plaintiffs never entered into a "separate agreement" modifying the aforementioned provision or authorizing the creation of a Funds Held account, and Defendant had no right to place Plaintiffs' overpayments in a Funds Held Account instead of applying the funds to the principal.

15.     Instead, Lone Star—without consent and without notifying Plaintiffs—sequestered Plaintiffs' prepayments into a Funds Held account. Although the Funds Held account paid a small amount of interest, the interest on the account was less than the interest Plaintiffs' were accruing on their mortgage, thus causing Plaintiffs to pay more interest than they would have had the overpayments been applied to the loan principal.

16.     When Plaintiffs learned of the scheme, in January 2019, they immediately requested that Defendant stop the practice and apply their prepayments to their balance. Defendant refused and continues to hold Plaintiffs' overpayments in the Funds Held account.

17.     Upon information and belief, it is Defendant's policy to sequester prepayments in a Funds Held account rather than applying it to the reduce a borrowers' balance.

18.     Through this practice, Defendant profits from the scheme by continuing to collect interest on the outstanding debt.

## CLASS ACTION ALLEGATIONS

### A.     Class Definition

19.     Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, and do so on behalf of themselves and the following class:

> All persons who, within the applicable statute of limitations, made overpayments on their mortgage and had monies placed in a Funds Held account by Lone Star AG Credit.

20.     Excluded from the Class are Defendant's officers, directors, affiliates, legal representatives, employees, successors, subsidiaries, and assigns. Also excluded from the Class are any judges, justices, or judicial officers presiding over this matter and the members of their immediate families and judicial staff.

21.     Plaintiffs reserve the right to amend the Class definition if discovery and further investigation reveal that the Class should be expanded or otherwise modified.

22.     Plaintiffs reserve the right to establish sub-classes as appropriate.

### B.     Class Certification Requirements Under Rule 23

23.     Numerosity: Rule 23(a)(1): The class members are so numerous that joinder of all members is impracticable. Plaintiff is informed and believes that the proposed class contains hundreds of individuals who have been damaged by Defendant's conduct as alleged herein. The precise number of class members is unknown to Plaintiff.

24.     Common Questions of Law and Fact Predominate: Rules 23(a)(2) and 23(b)(3): There are many questions of law and fact common to Plaintiffs and the class members, and those questions substantially predominate over any questions that may affect individual class members. Common questions of fact and law include:

      a)   Whether Defendant engaged in the conduct alleged in the Complaint;

b)  Whether Defendant placed Plaintiffs' and the class members' overpayments into a Funds Held account rather than applying the overpayments to the principal balance;

c)  Whether the Truth in Lending Act required Defendant to apply the overpayments to the principal on Plaintiffs' and the class members' respective loans or mortgages;

d)  Whether Defendant's conduct represented of breach of the respective contracts with Plaintiffs and the class members;

e)  Whether Defendant's conduct harmed Plaintiffs and the class members;

f)  Whether Plaintiffs and the class members are entitled to equitable relief, including but not limited to, restitution or injunctive relief;

g)  Whether Plaintiffs and the class members are entitled to damages and other monetary relief and, if so, in what amount;

h)  Whether Defendant's conduct constituted a violation of the Truth in Lending Act;

i)  Whether Plaintiffs and the class members are "consumers" under the Truth in Lending Act and engaged in a consumer credit transaction with Defendant;

j)  Whether Defendant is a "creditor" under the Truth in Lending Act;

k)  Whether Plaintiffs and the class members are entitled to statutory damages and the other relief provided under the Truth in Lending Act;

l)  Whether Defendant fraudulently concealed their conduct from Plaintiffs and the class members.

25.  Typicality Rule 23(a)(3)(i).: Plaintiffs' claims are typical of the claims of the class members whom they seek to represent under Federal Rule of Civil Procedure 23(a)(3)(i), because

Plaintiffs and each class member had loans that were originated with Defendant and/or was Defendant was the loan servicer. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the other class members. Plaintiffs 'claims are based upon the same legal theories as the claims of the other class members.

26.     Adequacy of Representation Rule 23(a)(4): Plaintiffs will fairly and adequately represent and protect the interests of the class members as required by Federal Rule of Civil Procedure 23(a)(4). Plaintiffs have retained counsel with substantial experience in prosecuting complex and class action litigation. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Classes and have the financial resources to do so. Neither Plaintiffs nor their counsel have interests that conflict with the interests of the other class members. Therefore, the interests of the class members will be fairly and adequately represented.

27.     Declaratory and Injunctive Relief: Rule 23(b)(2). Defendant has acted or refused to act on ground generally applicable to Plaintiffs and the other class members, thus making final injunctive and declaratory relief, as describe below, with respect to the class members as a whole.

28.     Superiority of Class Action: 23(b)(3): Plaintiffs and the class members have suffered, and will continue to suffer, harm as a result of Defendant's unlawful and wrongful conduct. A class action is superior to any other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the Classes is impractical. The amounts at issue would not be economical to litigate individually. Even if individual class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies caused by Defendant's common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable

handling of all class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the class members.

## The Statutes of Limitations are Tolled

### A.    Discovery Rule

29.    Plaintiffs and the class members did not discover, and could not have discovered through the exercise of reasonable diligence, that Defendant was failing to apply the overpayments to the loan principal amount.

30.    Plaintiffs and the class members had no realistic ability to discovery the presence of this misconduct, or to otherwise learn of the misconduct, until their correspondence with Defendant in or around January 2019.

### B.    Fraudulent Concealment

31.    All applicable statutes of limitation have also been tolled by Defendant's knowing, active and ongoing fraudulent concealment of the facts alleged in this Complaint.

32.    Plaintiffs had no knowledge of, nor any reason to suspect the existence of, Defendant's failure to apply the overpayments to the loan principal. The documentation that Defendant's provided Plaintiffs did not sufficiently identify that the Plaintiff's overpayments were being placed in the Funds Held account and not applied to the loan principal, and Defendant provided no other indicia to show the manner in which the overpayments were handled.

## CAUSES OF ACTION

**Count 1: Breach of Contract**

33.    Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully written herein.

34.    Plaintiffs and the class members have a contract with Defendant.

35.     Defendant breached the terms of its contract with Plaintiffs and the class members by failing to apply the overpayments to the mortgage balance, which prevented Plaintiffs and class members from being able to prepay their principal balances and by instead placing such overpayments in a Funds Held account.

36.     Plaintiffs and members the class members have performed all, or substantially all, of the obligations imposed on them under the contract.

37.     Plaintiffs and the class members have been damaged as a result of Defendant's breach. Plaintiffs and the class members are entitled to fees and costs pursuant to § 37 of the Texas Civil Practice and Remedies Code.

**Count Two: Breach of the Covenant of Good Faith and Fair Dealing**

38.     Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully written herein.

39.     Plaintiffs and the class members have a contract with Lone Star.

40.     All contracts contain an implied covenant of good faith and fair dealing which prevents either party from doing anything that the effect of injuring the right of the other party to receive the fruits of the contract.

41.     Defendant breached the implied covenant of good faith and fair dealing with Plaintiffs and the class members by failing to apply the overpayments to the loan principal and preventing Plaintiffs and class members from prepaying their principal balance.

42.     Defendant engaged in this conduct in bad faith or at a minimum was arbitrary and capricious.

43.     Plaintiffs and members of the Class have performed all, or substantially all, of the obligations imposed on them under the contract.

44.     Plaintiffs and class members have been damaged as a result of Defendant's breach of the covenant of good faith and fair dealing. Plaintiffs and the class members are entitled to fees and costs pursuant to § 37 of the Texas Civil Practice and Remedies Code

**Count Three- Violation of Truth in Lending Act (12 C.F.R. § 1026)**

45.     Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully written herein.

46.     The Truth in Lending Act mandates that loan servicers like Defendant apply payments in a specific way to a lender's account. Specifically, the Act directs that "no servicer shall fail to credit a payment to the consumer's loan account as of the date of receipt, except when a delay in crediting does not result in any charge to the consumer." 15 U.S.C. § 1639f(a).

47.     Regulations promulgated under the Truth in Lending Act likewise provide that "[n]o servicer shall fail to credit a periodic payment to the consumer's loan account as of the date of receipt, except when a delay in crediting does not result in any charge to the consumer." 12 C.F.R. § 1026.36(c)(1)(i). A "periodic payment" is defined as a payment that is "an amount sufficient to cover principal, interest, and escrow (if applicable) for a given billing cycle." 12 C.F.R. § 1026.36(c)(1)(i).

48.     When it failed to apply the entirety of Plaintiffs' payments to the loan principal, Defendant blatantly violated the Truth in Lending Act. When Defendant failed to apply the full periodic payment, including the amount in excess of the monthly payment, to the loan principal, Defendant caused Plaintiffs to incur a "charge to the consumer" in the form of the extra interest on the loan principal that should have been reduced by the overpayment.

49.     At all relevant times, Defendant constituted a "creditor" under the Truth in Lending Act because it both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four

installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement. Because Defendant was a creditor and not merely a loan servicer, it is subject to civil liability under the Truth in Lending Act.

50.     In the alternative and to the extent that the conduct of an entity other than Defendant served as the servicer and "fail[ed] to credit a payment to the [Plaintiffs] loan account as of the date of receipt," Defendant is vicariously liable for the above violations of the Truth in Lending Act that Plaintiffs and class members suffered

51.     Due to the violations of the Truth in Lending Act, Plaintiffs seek all remedies available under the Act, including actual damages, statutory damages, costs of the action, and reasonable attorney's fees.

**Count Four- Unjust Enrichment**

52.     Plaintiffs re-allege the preceding paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

53.     Plaintiffs, on behalf of themselves and the Class, assert a common law claim for unjust enrichment.

54.     Defendant has requested, received, and retained funds from the Plaintiffs and Class members under such circumstances that in equity and good conscience Defendant ought not to retain those funds.

55.     Defendant acted with conscious disregard for the rights of Plaintiffs and members of the Class.

56.     As a result of Defendant's wrongful conduct as alleged herein, Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and members of the Classes.

57.    Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

58.    Under the common law doctrine of unjust enrichment, it is inequitable for Defendant to be permitted to retain the benefits they received and is still receiving, without justification. Defendant's retention of such funds under the circumstances making it inequitable to do so constitutes unjust enrichment.

59.    The financial benefits derived by Defendant rightfully belong to Plaintiffs and members of the Classes. Defendant should be compelled to disgorge in a common fund for the benefit of Plaintiffs and members of the Classes all wrongful or inequitable proceeds received by them. A constructive trust should be imposed upon all wrongful or inequitable sums received by Defendant traceable to Plaintiffs and the members of the Classes.

60.    Plaintiffs and members of the Classes have no adequate remedy at law.

## DEMAND FOR JURY

61.    Plaintiffs hereby demand trial by jury.

## REQUESTED RELIEF

62.    Plaintiffs request that final judgment be entered against Defendant declaring, ordering, and adjudging that:

a.  An order certifying the Class and appointing Plaintiffs and their counsel to represent the Class;

b.  Monetary relief and/or equitable relief in an amount to be determined at trial;

c.  Statutory damages, including treble damages;

d.  Punitive or Exemplary damages;

e.  Pre-judgment interest as permitted by law;

f.  Attorneys' fees and costs as permitted by law; and

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES                                    12

   g.  Such other legal or equitable relief, including injunctive and/or declaratory relief, as the

Court may deem appropriate.

Dated: August 27, 2019              Respectfully submitted,


                         */s/ Warren T. Burns*
                         Warren Burns (TX Bar No. 24053119)
                         Will Thompson (TX Bar No. 24094981)
                         (seeking admission to WDTX)
                         BURNS CHAREST LLP
                         900 Jackson St., Suite 500
                         Dallas, Texas 75202
                         Telephone: (469) 904-4550
                         Facsimile: (469) 444-5002
                         wburns@burnscharest.com
                         wthompson@burnscharest.com

                         Jeffrey Kaliel (to seek admission *Pro Hac Vice*)
                         Sophia Gold (to seek admission *Pro Hac Vice*)
                         KALIEL PLLC
                         1875 Connecticut Avenue NW, 10th Floor
                         Washington, DC 20009
                         Telephone: (202) 350-4783
                         jkaliel@kalielpllc.com
                         sgold@kalielpllc.com

                         Attorneys for Plaintiffs and the Putative Class

.